**BANKS LAW OFFICES, LLC**
JAMES H BANKS - Attorney ID No. 20053843
One University Plaza Drive
Suite 412
Hackensack, NJ 07601
Phone: (201) 254-9919
Fax: (201) 254-9921
Email: jbanks@banks-lawoffices.com
*Attorney(s) for Plaintiff*

| | |
|---|---|
| Vonetta Blue,<br><br>                                    Plaintiff,<br><br>v.<br><br>Altice USA, Inc; CSC Holdings, LLC; John Doe, 1-10; Jane Doe, 1-10; John Doe Corp., 1-10; fictitiously named,<br><br>                                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br> LAW DIVISION<br>MIDDLESEX COUNTY<br><br>DOCKET NO.:<br><br><br>**COMPLAINT** |

Plaintiff, Vonetta Blue, residing in the Borough of Watchung, State of New Jersey, by way of Complaint against the Defendants, herein says:

## **PARTIES**

(1)      Vonetta Blue, (hereinafter referred to as "Plaintiff"), is a resident of the State of New Jersey with an address at 5102 Emerald Drive, Watchung, New Jersey 07069.

(2)      Plaintiff was, at all relevant times herein, an employee of Altice USA, Inc./CSC Holdings, LLC, (hereinafter referred to as "Defendants").

(3)      Altice USA, Inc./CSC Holdings, LLC is a communications and media company who, through its brands such as Optimum, provides broadband communications and video services to customers throughout the United States and whose headquarters is located at 1 Ct.

Square, W. Long Island City, New York, 11101.

(4)        During all relevant time periods, Altice USA, Inc. was conducting business as Optimum/Cablevision, and located at 30 Knightsbridge Road, Piscataway, New Jersey 08854.

## BACKGROUND AND STATEMENT OF FACTS

(5)        On or about September 28, 2015, Plaintiff commenced employment with Defendants as a Retention Account Manager for Defendants' Optimum brand and continues to work in that capacity as of the filing of this Complaint.

(6)        Plaintiff works at the office located at 30 Knightsbridge Road, Piscataway, New Jersey 08854.

(7)        Plaintiff works full-time, Monday through Friday, 11 AM to 8 PM, earning $19 per hour plus commission.

(8)        On January 31, 2020, Plaintiff was diagnosed with breast cancer and was advised that she required surgery with possible follow-up radiation treatment.

(9)        As a result of Plaintiff's cancer diagnosis, Plaintiff's immune system was compromised, exposing Plaintiff to a high risk of infection.

(10)        On a daily basis, Plaintiff was being exposed to colleagues in the office who were testing positive for Covid-19.

(11)        Plaintiff's exposure to Covid-19 was putting Plaintiff at a high risk of serious illness which led to Plaintiff suffering from depression and anxiety.

(12)        On or about June 8, 2020, a reasonable accommodation request for Plaintiff to work from home was submitted to The Lincoln Life Insurance Company, (hereinafter referred to as "Lincoln"), the administrator for Defendant's reasonable accommodation and leave determinations.

(13)      Plaitniff's request for a reasonable accommodation was supported by Plaintiff's

Therapist who submitted a functional mental status evaluation following a request from Lincoln.

(14)      This request was denied by Defendants.

(15)      On November 6, 2020 via email, Plaintiff informed the Employee Relations

Manager,  Susan Facchini, (hereinafter referred to as "Facchini"), that she had been diagnosed

with breast cancer and was scheduled to have surgery on December 1, 2020 and that Plaintiff

was calling out sick from work as a result of experiencing Covid-19 symptoms.

(16)      In response to the November 6, 2020 email, Facchini emailed Plaintiff

instructions on filing a disability claim with Lincoln.

(17)      On November 9, 2020, following positive Covid-19 tests among her colleagues,

Plaintiff attended her doctor regarding Covid-19 exposure and the need for quarantine.

(18)      On November 10, 2020, Plaintiff sent a doctor's note to Defendants excusing

Plaintiff from work for 14 days due to Covid-19 quarantining.

(19)      In response to Plaintiff's email, Facchini emailed Plaintiff requesting further

documentation from Plaintiff's doctor.

(20)      Plaintiff responded by providing Facchini with the 7-page visit summary

generated by her doctor following the visit.

(21)      Despite the doctor's note and supporting documentation, on November 12, 2020,

Facchini informed Plaintiff that she was approved for only 7 days of leave due to Covid-19

exposure and therefore would only be paid for those 7 days.

(22)      On or about November 20, 2020, Leslie Newmy, (hereinafter referred to as

"Newmy"), Employee Relations Specialist and Facchini, contacted Plaintiff regarding the

doctor's note which had the date of visit listed as November 89, 2020, instead of November 9,

2020.

(23)     Without Plaintiff's knowledge or consent, Facchini contacted, whom she thought

was Plaintiff's doctor, to confirm the authenticity of the note and patient summary and forwarded

a copy of both to the doctor for review, in total violation of Plaintiff's HIPAA rights.

(24)     This course of action was taken by Newmy and Facchini even though the 7-page

visit summary displayed the correct date of November 9, 2020.

(25)     The doctor contacted by Facchini was not Plaintiff's doctor and as expected,

denied writing the note or the patient summary.

(26)     Facchini immediately accused Plaintiff of forging medical documents and advised

her that she was terminated from her position.

(27)     Plaintiff responded by informing Facchini that she had paid for the doctor's visit

using her debit card and that her bank statement reflected the medical establishment she

attended.

(28)     Facchini requested that Plaintiff send a copy of her bank statement, via text

message, to Newmy's cell phone.

(29)     Before Plaintiff sent a copy of the bank statement, Newmy texted Plaintiff

advising her that the bank statement was no longer required.

(30)     In a response to Plaintiff's email to Facchini, wherein Plaintiff informed Facchini

that she had provided sufficient medical documentation to support her leave from work; that

Facchini had violated her rights under HIPAA; and that Plaintiff felt harassed and discriminated

against, Facchini denied requesting Plaintiff's bank statement and advised her that she could

return to work on November 23, 2020.

(31)     On November 20, 2020, Plaintiff contacted Lincoln regarding disability leave for

her breast cancer surgery scheduled for December 1, 2020.

(32)     On December 10, 2020 Plaintiff was advised by her Supervisor that her application for disability was not approved.

(33)     On January 8, 2021, Plaintiff submitted an application for leave of absence for the period December 14, 2021 through January 25, 2021.

(34)     On January 13, 2021, Plaintiff submitted a request for accommodation from January 13 through March 15.

(35)     On January 20, 2021, Plaintiff received a request from Lincoln for additional information regarding her surgery and cancer treatment which Plaintiff provided.

(36)     On January 25, 2021 Plaintiff was contacted by Human Resources and her Supervisor advising her to return to work immediately as her leave was not approved and a "no call no show" would result in Plaintiff's automatic termination.

(37)     On January 29, 2021, Plaintiff received notification from Lincoln stating that her request for disability had been approved.

(38)     On or about February 2021, Plaintiff submitted a complaint for discrimination based on her disability, to the Equal Employment Opportunity Commission, (hereinafter referred to as "EEOC").

(39)     Due to the high number of positive Covid-19 cases among Plaintiff's colleagues and the degree of exposure to same, many of Plaintiff's colleagues were granted work from home status and the office facility even had to be shut down at one point.

(40)     Due to Plaintiff receiving radiation therapy for her cancer, and resulting compromised immune system, on March 9, 2021, Plaintiff submitted a request to Lincoln for a reasonable accommodation to work from home based on the advice of her cancer doctor.

(41)     On March 15, 2021, Plaintiff spoke with a claims examiner from Lincoln who indicated that she could see no reason why Plaintiff's request to work from home should not be approved.

(42)     On or about March 17, 2021, Certified ADA Administrator Triska Henry-Byrd from Lincoln held a phone interview with Dorothy Pearce, a practice nurse from Plaintiff's cancer radiation care team,  regarding a reasonable accommodation for Plaintiff and in addition, informed Plaintiff that due to her cancer diagnosis, Plaintiff should be approved for a reasonable accommodation to work from home.

(43)     On March 22, 2021, Plaintiff submitted an Accommodation Questionnaire to Lincoln in support of her application for a reasonable accommodation.

(44)     On April 27, 2021, Plaintiff sent an email to Human Resources inquiring as to the status of her reasonable accommodation request.

(45)     On May 5, 2021, Plaintiff sent another email to Human Resources inquiring as to the status of her request.

(46)     On May 11, 2021, Plaintiff received an email from Human Resources denying Plaintiff's request for a reasonable accommodation and advising her that they offer an alternative stay at work accommodation.

(47)     On or about October 11, 2021, Plaintiff filed a complaint with the US Department of Labor Occupational Safety and Health Administration, (hereinafter referred to as "OSHA"), based on harassment and intimidation Plaintiff suffered as a result of her complaints to management about unlawful work conditions at her office.

(48)     On or about December 1, 2021, Plaintiff, who was fully vaccinated, tested positive for Covid-19 and submitted a copy of the positive test result, along with a note from her

doctor to Defendants.

(49)     As per company policy at that time, any employee who was fully vaccinated and who was absent from work due to a positive Covid-19 test result, would be paid their wages in full.

(50)     Plaintiff was absent from her job for a period of three weeks due to her Covid-19 diagnosis but Defendants refused to pay her wages, even though colleagues of Plaintiff, outside of her protected class, were paid when they were absent under the same circumstances.

(51)     Finally on January 24, 2022, following the intervention of the EEOC, Plaintiff was granted a reasonable accommodation and was permitted to work from home.

(52)     Throughout Plaintiff's tenure with Defendants, Plaintiff was never disciplined for a violation of company policy nor was Plaintiff ever written up for any reason.

(53)     Plaintiff has always maintained a stellar employment record throughout her employment with Defendants.

## FIRST COUNT

### (Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.)

(1)     Plaintiff repeats and re-alleges each and every allegation set forth above as if recounted at length herein.

(2)     As a result of being diagnosed with breast cancer Plaintiff, having to undergo surgery and radiation therapy which resulted in depression and anxiety, including a compromised immune system, all made worse during the existence of a pandemic, was temporarily disabled and requested a reasonable accommodation to facilitate that disability.

(3)     Plaintiff at all times adhered to the policies and procedures of Defendants by

submitting all requested test results; notes from her cancer doctor and therapist; completed

questionnaires; and even had a nurse from her cancer team participate in an interview with

Lincoln.

(4)      White colleagues of Plaintiff without disabilities, were granted permission by

Defendants to work virtually from their homes which clearly demonstrates no undue hardship to

the Company to facilitate Plaintiff's request.

(5)      Plaintiff was at all times transparent with Defendants about her treatments and

diagnoses.

(6)      Defendant's unlawfully discriminated against Plaintiff, who is African-American,

because of her temporary disability, her race and her request for a reasonable accommodation.

(7)      Defendants proffered reason for denying Plaintiff a reasonable accommodation is

inconsistent with the facts.

(8)      Defendants had granted permission to several of Plaintiff's colleagues to work

from home; employees outside of Plaintiff's protected class.

(9)      Plaintiff was forced to work in an environment where there was insufficient

ventilation, no partitions between staff or protections against Covid-19 even though Defendants

knew Plaintiff was at high risk for contracting and becoming serously ill with Covid-19 due to

her compromised immune system brought about by her cancer diagnosis.

(10)      Defendants already had many employees who were working from home so there

clearly was no undue burden to the company to allow Plaintiff to work from home.

(11)      Plaintiff suffered an adverse action and was discharged by Facchini who falsely

accused Plaintiff of forging medical documents and but for Plaintiff's efforts to disprove same,

Plaintiff would never have been reinstated to her position.

(12)     Defendant's reason for refusing Plaintiff a reasonable accommodation and discharging Plaintiff is thus pretextual and unworthy of credence.

(13)     Plaintiff suffered an adverse employment action, her termination, by Facchini.

(14)     In light of the circumstances,  Altice USA, Inc., *et al,* is the employer who discriminates against employees based on their race, disability and request for a reasonable accommodation and its actions raise an inference of discrimination.

(15)     Defendant's actions constitute a violation(s) of the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1, et seq.

(16)     As a result of the foregoing unlawful action(s) on the part of Defendant's, Plaintiff has suffered, and will continue to suffer, a loss of income and benefits.

(17)     In addition, Plaintiff has suffered, and will continue to suffer, extreme emotional distress and mental anguish arising out of embarrassment, humiliation and other injuries, as well as other adverse effects upon his daily, social, professional and family life.

(18)     Defendant's conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and moreover, involved the participation of Defendant's upper management, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff, Vonetta Blue, demands judgment against Defendants, Altice USA, Inc., CSC Holdings, LLC; John Doe 1-10, Jane Doe 1-10 and John Doe Corp. 1-10 jointly, severally and/or in the alternative, for compensatory damages, including vacation pay and benefits, emotional distress damages, punitive damages, attorney fees, costs of suit and such other and further relief as the Court may deem equitable and just.

## SECOND COUNT

### (*Retaliation In Violation of the New Jersey Conscientious*
*Employee Protection Act, N.J. Stat. §34:19-1 (CEPA))*

(1)      Plaintiff repeats and re-alleges each and every allegation set forth in the First Count as if recounted at length herein.

(2)      Plaintiff and her colleagues were forced to work in an environment during the Pandemic which had inadequate ventilation due to a non-working HVAC system and no windows to open; no segregation or screening between employees; and no effective provision of sanitary equipment such as masks or hand sanitizer.

(3)      Plaintiff brought her concerns about the unacceptable working conditions to management who did nothing to address the inadequacies.

(4)      On October 11, 2021, Plaintiff filed a complaint with OSHA on this basis.

(5)      Plaintiff complained to Human Resources about discrimination with regard to her disability and requested a reasonable accommodation which is a protected activity.

(6)      As a result of filing these complaints and engaging in these protected activities Plaintiff was denied the work from home accommodation and was terminated from her job.

(7) Defendants termination of Plaintiff's employment and refusal to grant her the work from home accommodation constituted "retaliatory action" in violation of N.J. Stat. §34:19-1 (CEPA) *et seq.*

(8)      Defendants' termination of Plaintiff and refusal to grant her a reasonable accommodation was a direct and retaliatory result of Plaintiff's complaints regarding the work conditions; the discrimination against her and her request for the reasonable accommodation.

(9)      As a result of the foregoing unlawful action(s) on the part of Defendant's,

Plaintiff has suffered, and will continue to suffer, a loss of income and benefits.

(10)　　In addition, Plaintiff has suffered, and will continue to suffer, extreme emotional distress and mental anguish arising out of embarrassment, humiliation and other injuries, as well as other adverse effects upon his daily, social, professional and family life.

(11)　　Defendant's conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and moreover, involved the participation of Defendant's upper management, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff, Vonetta Blue, demands judgment against Defendants, Altice USA, Inc., CSC Holdings, LLC, John Doe 1-10, Jane Doe 1-10 and John Doe Corp. 1-10 jointly, severally and/or in the alternative, for compensatory damages, including vacation pay and benefits, emotional distress damages, punitive damages, attorney fees, costs of suit and such other and further relief as the Court may deem equitable and just.

## THIRD COUNT

### *(Violation of New Jersey State Labor Laws and Regulations – Wage Payment Law)*

(1)　　Plaintiff repeats and re-alleges each and every allegation set forth in the First and Second Counts as if recounted at length herein.

(2)　　Defendants failed to pay Plaintiff the wages and benefits to which she was entitled under the N.J.S.A. §§ 34:11-56a *et seq.* Wage Payment Law.

(3)　　At all relevant times, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of The New Jersey State Wage Payment Law §34:11-56a *et seq.*

(4)　　The provisions of N.J.S.A. §§ 34:11-56a *et seq.* Wage Payment Law apply to Defendants and protect Plaintiff.

(5) Plaintiff was absent from her job for a period of three weeks due to her Covid-19 diagnosis but Defendants refused to pay her wages, even though colleagues of Plaintiff, outside of her protected class, were paid when they were absent under the same circumstances.

(6) As per Defendants own "Policy on Coronavirus Disease" employees who tested positive for Covid-19 were entitled to receive up to 3 weeks 100% paid administrative leave for the duration of the leave related to recovering from Covid-19.

(7) For employees who were exposed to a positive case of Covid-19, Defendant's "Policy on Coronavirus Disease" stated that all employees who have the ability to work remotely, should work remotely until cleared to return by a healthcare official or the Company.Employees whose roles were unable to be performed remotely would receive up to 3 weeks 100% paid administrative leave.

(8) Plaintiff was denied permission to work remotely, yet was also denied any pay when she was out of work on administrative leave due to exposure to a colleague with Covid-19.

(9) Plaintiff was forced to take an estimated 93 days of administrative leave due to Covid-19 exposure in the workplace and lost approximately Fourteen Thousand One Hundred Thirty-Six Dollars, ($14,136.00) in pay as a result. This does no include estimated commission Plaintiff would have earned while working those 93 days.

(10)    Had Defendants permitted Plaintiff to work from home as they did with her colleagues, Plaintiff would not have suffered this loss of income, nor was Plaintiff compensated by Defendants in accordance with their own policy on coronavirus disease.

(11)    Through their knowing or intentional failure to pay wages and benefits to Plaintiff, Defendant's have willfully violated the N.J.S.A. §§ 34:11-56a *et seq.* Wage Payment Law.

(12)      In light of the circumstances, Altice USA, Inc. *et al,* is the employer who fails to pay employees their entitled wages and benefits, for hours worked.

(13)      As a result of the foregoing unlawful action(s) on the part of Defendants, Plaintiff has suffered, and will continue to suffer, a loss of income and benefits.

(14)      In addition, Plaintiff has suffered, and will continue to suffer, extreme emotional distress and mental anguish arising out of embarrassment, humiliation and other injuries, as well as other adverse effects upon his daily, social, professional and family life.

(15)      Defendant's conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and moreover, involved the participation of Defendant's upper management, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff, Vonetta Blue, demands judgment against Defendants, Altice USA, Inc., CSC Holdings, LLC, John Doe 1-10, Jane Doe 1-10 and John Doe Corp. 1-10 jointly, severally and/or in the alternative, for compensatory damages, including vacation pay and benefits, emotional distress damages, punitive damages, attorney fees, costs of suit and such other and further relief as the Court may deem equitable and just.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised herein.

JAMES HARRISON BANKS, ESQ.
Attorney for Plaintiff,
Vonetta Blue


 /s/ James Harrison Banks

James Harrison Banks, Esq.


Dated:  May 24, 2022

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that, pursuant to Rule 4:25-4 notice is hereby given that JAMES

HARRISON BANKS, ESQ. is hereby designated as trial counsel in the above-captioned matter.

JAMES HARRISON BANKS, ESQ
Attorney for Plaintiff,
Vonetta Blue

 /s/ James Harrison Banks

James Harrison Banks, Esq.

Dated: May 24, 2022

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that, to the best of my knowledge and belief, the within matters in

controversy are not the subject of any other action pending in any other court or of a pending

arbitration proceeding. I am not presently aware of any other parties that should be joined in this

action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are wilfully false, I am subject to punishment.

  /s/ James Harrison Banks

James Harrison Banks, Esq.

Dated: May 24, 2022